Jordon Harlan, Esq. (CA #273978)
**HARLAN LAW, P.C.**
2404 Broadway, 2nd Floor
San Diego, CA 92102
Telephone: (619) 870-0802
Fax: (619) 870-0815
Email: jordon@harlanpc.com

Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
Anna Rick, Esq. (MN #0401065)
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: akress@johnsonbecker.com
Email: arick@johnsonbecker.com

*Attorneys for Plaintiff Jessica Ann Bettencourt*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESSICA ANN BETTENCOURT, an individual,<br><br>**Plaintiff,**<br><br>v.<br><br>**SHARKNINJA OPERATING LLC., a Massachusetts Limited Liability Company,**<br><br>**Defendant.** | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Strict Products Liability<br><br>2. Negligent Products Liability |

Plaintiff, **JESSICA ANN BETTENCOURT** (hereafter referred to as "Plaintiff"), by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **HARLAN LAW, P.C.**, hereby submit the following Complaint and

1
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Demand for Jury Trial against Defendant **SHARKNINJA OPERATING, LLC** **(**and upon information and belief, at all times hereinafter mentioned, alleges as follows:

## NATURE OF THE CASE

1. Defendant designs, manufacture, markets, imports, distributes and sells consumer products such as blenders, which specifically includes the NutriNinja, Model BL610, (referred to hereafter as "NutriNinja blender(s)").

2. The NutriNinja blenders are defectively designed and manufactured, in that, the extremely fast-moving blade of the blenders heat the contents of the sealed bullet-shaped canister, which can (and does) unexpectedly explode when being used in its normal and intended manner by consumers. Consumers use the NutriNinja blenders without knowledge of the inherent risks. In a matter of short amount of time, the fast-spinning blades can unexpectedly heat up its contents, such that if the blender explodes, the user is at risk of severe burns or lacerations and injuries requiring medical attention. The NutriNinja blenders pose a safety risk to consumers and other individuals who may be in close proximity to the NutriNinja blenders when it explodes.

3. The NutriNinja blenders have been the subject of numerous lawsuits around the nation for similar experiences and injuries as those suffered by the Plaintiff in this case.

4. Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell its NutriNinja blenders to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective NutriNinja blenders regardless of the risk of significant injuries to Plaintiff and consumers like her.

5. Defendant ignored and/or concealed its knowledge of these defects in its NutriNinja blenders from the Plaintiff in this case, as well as the public

in general, in order to continue generating a profit from the sale of said NutriNinja blenders, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

6. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF JESSICA ANN BETTENCOURT

7. Plaintiff is a resident and citizen of the city of San Jose, County of Santa Clara, State of California, and was born on February 29, 1992.

8. On or about January 3, 2020, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the SharkNinja blender's blade detaching from blade base during the normal, directed use of the SharkNinja blender. The incident occurred as the result of the SharkNinja Blenders defect(s), which allow the plastic cup of the SharkNinja blender to pressurize to the point that the canister separates from the blade base of the SharkNinja blender, causing the now hot contents of the SharkNinja blender, as well as the parts of the SharkNinja blender itself, to explode. Additionally, the incident occurred as the result of Defendants failure to warn and to redesign the SharkNinja blender, despite the existence of economical, safer alternative designs.

## DEFENDANT SHARKNINJA OPERATING, LLC

9. Defendant SharkNinja designs, manufacturers, markets, imports, distributes and sells a variety of consumer products, including the subject NutriNinja blender. Defendant SharkNinja is a Massachusetts Limited Liability Corporation incorporated in the State of Delaware and has a principal place of business located at 89 A St. # 100, Needham, MA 02494. Defendant SharkNinja has a registered service address Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

10. At the time of the initiation of this lawsuit, the sole member of SharkNinja Operating, LLC was EP Midco, LLC, a Massachusetts Limited Liability Company created and organized under the law of the State of Delaware and located at 89 A St. # 100, Needham, MA 02494.

11. At the time of the initiation of this lawsuit, the sole member of EP Midco, LLC was Brian Lagarto.

12. Mr. Largato is a resident and citizen of the state of Massachusetts, and operates out of his principle places of business, 180 Wells Avenue, Suite 200, Newton, Massachusetts, 02459.

13. Accordingly, Defendant SharkNinja is a resident and citizen of the State of Massachusetts for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

## **JURISDICTION & VENUE**

14. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

15. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this District.

16. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of California and intentionally availed itself of the markets within California through the promotion, sale, marketing, and distribution of its products.

## **FACTUAL BACKGROUND**

17. All NutriNinja blenders, including the NutriNinja Blender that injured the Plaintiff, essentially have three components: a powered base unit which contains a high-speed motor ("power base"), a plastic cup-shaped

container that holds ingredients to be blended ("cup"), and a plastic lid mounted with metal blades ("blade base"), which screws into the cup and is energized by the base.

18. During the normal, as-directed use of a NutriNinja blender, a consumer puts cool or room temperature food into the plastic "bullet" cup. Once the cup is secured to the blade assembly and placed onto the unit's base, the user is able to run the blender by pressing down on the cup. The blades then rotate, creating friction as they cut and chop the cup's contents, which in turn causes the contents to heat up.

19. As the temperature rises inside the cup, the pressure from the frictional energy also rises. The temperature can get so hot that the pressure inside the cup forces the cup to separate from the blade while the blender is still running. This can cause the hot contents of the cup to explosively project outward without warning, landing on anyone and anything nearby.

20. Even if the cup does not separate from the blender while in use, the user is still at risk. If the contents of the cup are hot and under pressure when the cup is opened, the hot contents can again be explosively ejected onto the user, causing serve lacerations from a detached blade.

21. The NutriNinja blenders have been manufactured such that consumers cannot safely use them in the intended manner without risk of the NutriNinja blenders exploding which may result in physical injury or property damage.

22. There is no pressure relief built into the plastic cup other than unscrewing the lid.

23. Furthermore, there are no indictors for pressure build-up expect for resistance upon twisting the lid. The consumer lacks any obvious way to judge the danger of or the amount of pressure and heat buildup without handling the cup directly, thereby exposing the consumer to the release of hot contents or the

blade base itself.

24. By reason of the forgoing acts or omissions, the above-named Plaintiff purchased tthe NutriNinja blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

25. Plaintiff used her NutriNinja blender for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by Defendant.

26. However, the aforementioned NutriNinja blender was defectively designed and manufactured by Defendants in that its plastic cup could explosively separating from the blade base during the normal, directed use of the NutriNinja blender, allowing its scalding hot contents to be forcefully ejected onto consumer such as the Plaintiff.

27. Defendant's NutriNinja blenders possess defects that make them unreasonably dangerous for their intended use by consumers because the plastic cup can explosively separate from the blade base.

28. Economic, safer alternative designs were available that could have prevented the NutriNinja blender's plastic cup from explosively separating from the blade base. Examples of such designs include, but are not limited to, the following examples:

    a. Designing the NutriNinja blender with pressure relief built into the plastic cup other than unscrewing the lid; and

    b. Designing the NutriNinja blender with indictors for pressure build-up within the plastic cup.

    c. Packaging the blade with the blade base appropriately so as not to come detached in use or open unpackaging the product.

29. As a direct and proximate result of Defendants intentional concealment of such defects, its failure to warn consumers of such defects, its

negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous blender, which resulted in significant and painful bodily injuries.

30. Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's blender as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## FIRST CAUSE OF ACTION
## **STRICT PRODUCTS LIABILITY**

PLAINTIFF, FOR A FIRST CAUSE OF ACTION AGANST SHARKNINJA OPERATING, LLC., ALLEGES AS FOLLOWS:

31. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

32. At the time of Plaintiff's injuries, Defendant's SharkNinja blenders were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

33. Defendant's SharkNinja blenders were in the same or substantially similar condition as when they left the possession of Defendants.

34. Plaintiff did not misuse or materially alter the SharkNinja blender.

35. The SharkNinja blenders did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

36. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the SharkNinja blenders safe. Specifically:

   a. The SharkNinja blenders designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the

        stream of commerce in a defective and unreasonably dangerous condition for consumers;

b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the SharkNinja blenders, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendant failed to warn and place adequate warnings and instructions on the SharkNinja blenders;

e. Defendant failed to adequately test the SharkNinja blenders; and

f. Defendant failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

37. Defendant's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant for and punitive damages according to proof, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

### SECOND CAUSE OF ACTION
### NEGLIGENT PRODUCTS LIABILITY

PLAINTIFF, FOR A SECOND CAUSE OF ACTION AGANST SHARKNINJA OPERATING, LLC., ALLEGES AS FOLLOWS:

38. Plaintiff incorporates by reference each preceding and succeeding

paragraph as though set forth fully at length herein.

39. Defendant has a duty of reasonable care to design, manufacture, market, and sell non-defective SharkNinja blenders that are reasonably safe for their intended uses by consumers, such as Plaintiff and his family.

40. Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its SharkNinja blenders in that Defendants knew or should have known that said SharkNinja blenders created a high risk of unreasonable harm to the Plaintiff and consumers alike.

41. Defendant's negligent in the design, manufacture, advertising, warning, marketing and sale of its SharkNinja blenders in that, among other things, they:

   a. Failed to use due care in designing and manufacturing the SharkNinja blenders to avoid the aforementioned risks to individuals;
   b. Placed an unsafe product into the stream of commerce;
   c. Aggressively over-promoted and marketed its SharkNinja blenders through television, social media, and other advertising outlets; and
   d. Were otherwise careless or negligent.

42. Even though Defendants knew or should have known of the aforementioned defects, Defendants continued to market (and continue to do so) its SharkNinja blenders to the general public.

**WHEREFORE,** Plaintiff demands judgment against Defendant for and punitive damages according to proof, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## **INJURIES & DAMAGES**

8. As a direct and proximate result of Defendant's negligence and

wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident on or about December 20, 2018. Plaintiff is entitled to recover damages from Defendants for these injuries in an amount which shall be proven at trial.

9. As a direct and proximate result of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendants in an amount to be proven at trial.

10. As a direct and proximate cause of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the severe burns she suffered as a result of the incident. Plaintiff is entitled to recover damages from Defendants for her past, present and future medical and other expenses in an amount which shall be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendant on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendant, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for her injuries and suffering sustained because of the use of the Defendants' defective pressure cooker;

D. That all costs be taxed against Defendant;

E. That prejudgment interest be awarded according to proof;

F. That Plaintiff be awarded attorney's fees to the extent permissible under Federal and California law; and

G. That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Dated: December 23, 2022

**HARLAN LAW, P.C**

*/s/ Jordon Harlan, Esq.*
Jordon Harlan, Esq. (CA #273978).
2404 Broadway, 2nd Floor
San Diego, CA 92102
Telephone: (619) 870-0802
Fax: (619) 870-0815
Email: jordon@harlanpc.com

*In association with*:

**JOHNSON BECKER, PLLC**

Adam J. Kress (MN#0397289)
*Pro Hac Vice to be filed*
Anna Rick, Esq. (MN #0401065)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: akress@johnsonbecker.com
arick@johnsonbecker.com

11
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

**Dated: December 23, 2022**          **JOHNSON BECKER, PLLC**

By */s/ Jordon Harlan, Esq.*
Jordon Harlan, Esq. (CA #273978)