IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JESICA ANN BETTENCOURT,

Plaintiff,

v.

SHARKNINJA OPERATING LLC.,

Defendant.

Case No.  22-cv-09091-CRB

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE OPINIONS OF DEREK KING**

Plaintiff Jessica Ann Bettencourt suffered hand lacerations when the blade assembly fell out of a blender manufactured by Defendant SharkNinja Operating, LLC ("SharkNinja").  Plaintiff sued SharkNinja, alleging strict and negligent products liability due to SharkNinja's failure to provide a locking mechanism for the blade assembly.  Am. Compl. (dkt. 12).  SharkNinja moves to exclude the testimony of Plaintiff's expert.  Mot. (dkt. 44).  As explained below, the Court DENIES the motion with respect to Opinion Nos. 1 and 2 and GRANTS the motion with respect to Opinion Nos. 3, 4, and 5.

## I.      BACKGROUND

### A.      Factual History

SharkNinja designs and manufactures Ninja BL610 blenders ("Blender").  Am. Compl. ¶ 8.  The Blender consists of three components: (1) a motor base; (2) a pitcher; and (3) a stacked blade assembly.  Id. ¶ 17.  The blade assembly, which runs the length of the pitcher, does not lock into place and is not otherwise secured when the lid is off or unlocked.  Id. ¶¶ 17–19.  It looks like this:

 

Mot. at 6, 10.[1]  SharkNinja provides warnings about the loose, sharp blades in the product packaging, Owner's Guide, and "Inspiration Guide," and on the lid of the Blender.  Kaiser Decl. Exs. C (packaging) (dkt. 44-4), D ("Owner's Guide") (dkt. 44-5), E ("Inspiration Guide") (dkt. 44-6), F (warning) (dkt. 44-7).

The blender can only be operated when the lid is locked onto the pitcher.  Kaiser Decl. Ex. B ("Rimkus Report") (dkt. 44-3) at 8; Owner's Guide at 10.  There are two ways by which users can pour blended contents out of the blender.  The first is by pouring the contents out through the lid's "pour spout."  Owner's Guide at 11.  It looks like this:

---

[1] This order cites to Defendant's Motion to Exclude by referencing the efiling page number and not the internal page number.  The page numbers of other court documents are the internal page number unless otherwise indicated.



Rimkus Report at 20.  The second is by removing the lid, removing the stacked blade, and then pouring the contents out of the open pitcher, as illustrated here:



Id.  The owner's manual explains that to remove the lid, users should "Press the release button on the lid, pull the handle up to a 90 degree angle, then lift [the] lid off the pitcher." Owner's Guide at 11.

Plaintiff used the Blender to make a smoothie.  Kaiser Decl. Ex. H ("Pl.'s Dep. Vol. II") (dkt. 44-9) at 24:18–19.  After blending the ingredients, Plaintiff tilted the pitcher to pour the smoothie into a cup.  Id. at 28:10–12.  Plaintiff does not remember whether the lid was locked, but remembers that she did not remove the lid.  Id. at 28:13–15, 32:22–25–33:1.  According to SharkNinja's expert, the lid cannot fall off of the pitcher if it is properly locked.  Rimkus Report at 16.  The lid fell off, the blade fell out of the pitcher, and Plaintiff's hand was cut.  Pl.'s Dep. Vol. II at 29:2–9.

**B.    Procedural History**

Plaintiff filed suit, claiming strict and negligent products liability.  See generally Compl. (dkt. 1).  Plaintiff amended her complaint, still claiming strict and negligent

products liability.  See Am. Compl. ¶¶ 32–42.  Plaintiff also submitted an expert report from Derek King in support of her defective design claim.  See Kaiser Decl. Ex. K ("King Report") (dkt. 44-12).  SharkNinja filed a motion for summary judgment and a motion to exclude Mr. King's testimony.  MSJ (dkt. 45)[2]; Mot.  In its motion for summary judgment, SharkNinja contends, among other things, that Plaintiff's claims fail because she can neither satisfy the prima facie requirements for defective design nor present evidence of causation without admissible expert testimony.  MSJ at 7–8.[3]

**C.    Derek King's Testimony**

Plaintiff's expert, Derek King, holds an M.S. in Electrical Engineering from Ohio University and a B.S. in Mechanical Engineering from University of California, Berkeley. King Report at 3.  He has worked as an engineer for Berkeley Engineering and Research ("BEAR") since 2009 in the areas of failure analysis, design, and risk assessment of consumer and industrial equipment, including consumer blenders.  Id.

Currently, the Blender's blade assembly is only secured to the pitcher when the lid is locked.  See id. at 5.  As an alternative design, Mr. King proposes a "simple snap or locking mechanism" to hold the blade assembly in place when the lid is off or unlocked, to prevent lacerations from falling blades.  Id. at 6.  He provides the KitchenAid 3.5 Cup Food Chopper ("KitchenAid Chopper") as an example.  Id. at 8.  Both products are used to pulverize food and have a detaching blade assembly that slides over a fixture in the pitcher. Id.  They look like this:

---

[2] The Court addresses the summary judgment motion in a separate order.
[3] This order cites to Defendant's summary judgment brief by referencing the efiling page number and not the internal page number. The page numbers of other court documents are the internal page number unless otherwise indicated.

United States District Court
Northern District of California






Rimkus Report at 30 (SharkNinja product on the left, KitchenAid product on the right).

At the end of his report, Mr. King provides five opinions, all of which SharkNinja seeks to exclude in the present motion:

> (1) the design of the Blender is defective because the blade assembly can "unintentionally separate" from the pitcher and there are safer alternative designs available;
>
> (2) the warnings in connection with this product and the prior recalls of the BL660—a different SharkNinja product with a similarly unsecured blade assembly— show that SharkNinja was aware of the hazard from loose blades;

(3) SharkNinja's Design Failure Modes and Effects Analysis ("DFMEA")[4] of the Blender did not address the hazard from loose blades falling out of the pitcher;

(4) if SharkNinja's DFMEA had addressed the hazard from loose blades falling out of the pitcher, then SharkNinja would have implemented a locking mechanism; and

(5) Plaintiff's injury was likely caused by "the pitcher being tipped over without the lid," and a locking mechanism would have likely prevented the injury.

King Report at 15.

Mr. King's expert report appears to be based largely on a prior one submitted by his colleagues at BEAR in the Welch v. SharkNinja Operating LLC case. See No. 21CV00123, 2021 WL 6332889 (S.D. Tex. May 24, 2021) (alleging that the loose blade assembly of a different SharkNinja product caused severe hand lacerations when the user accidentally knocked the product off the counter while packing); Kaiser Decl. Ex. I ("Welch Report") (dkt. 44-10). In some parts of his report in this case, Mr. King accurately recites the facts of this case. See King Report at 3 ("[Plaintiff] suffered a severe hand laceration as a result of the stacked blade assembly separating from the blender cup when she was pouring the smoothie out into a separate cup to drink from"). Mr. King also provides photos of the correct SharkNinja product that injured Plaintiff, not the product at issue in the Welch Report. See id. at 5–8; Welch Report at 5. However, in other parts of his report in this case, Mr. King provides inconsistent facts that appear to be copied from the Welch Report:

| King Report in this case | Welch Report |
|---|---|
| "Ms. Bettencourt was using the subject Ninja BL610 Professional Blender that | "Mr. Welch […] accidentally tipped over the subject Ninja BL6850 Kitchen System |

---

[4] A DFMEA is a method of risk assessment customarily used in the design phase of consumer products to identify and eliminate product failures. See King Report at 9. A proper DFMEA will "systematically list, rank, classify, and assess failures," and prompt engineers to update the design to make the product safer for consumers. See id.

| | |
|---|---|
| was on her kitchen counter and the stacked blade dislodged when she reached for it."  King Report at 4. | that was on his kitchen counter and the stacked blade dislodged when he reached for [. . .] it."  Welch Report at 5. |
| "When the pitcher was knocked over, the blade assembly slid off the spline shaft and out of the pitcher, and Ms. Bettencourt was lacerated attempting to catch the pitcher."  King Report at 5. | "When the product was knocked over, the blade assembly slid off the spline shaft, out of the bowl and Mr. Welsh was lacerated attempting to catch the bowl."  Welch Report at 6. |
| "The risk of accidental tip-overs is similar[.]"  King Report at 10. | "The risk of accidental tip-overs is similar[.]"  Welch Report at 8. |

SharkNinja now moves to exclude Mr. King's testimony as irrelevant and unreliable, in part because of the inconsistencies in the King Report that appear to be copied from the Welch Report.  See Mot.

## II.    LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, an expert qualified by "knowledge, skill, experience, training, or education" may testify in the form of an opinion if it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Expert testimony is admissible if it is (1) relevant; and (2) reliable.  Daubert v. Merril Dow Pharms., Inc., 509 U.S. 579, 589 (1993).  Trial courts are to act as gatekeepers, ensuring that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).  The admissibility of an expert

opinion is a flexible inquiry: "whether <u>Daubert</u>'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." <u>Id.</u> at 153.  The general rule is that "[s]haky but admissible evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." <u>Primiano v. Cook</u>, 598 F.3d 558, 564 (9th Cir. 2010) (citing <u>Daubert</u>, 509 U.S. at 596).

Experts whose methodology is otherwise reliable should not be excluded because the facts they rely upon are in dispute unless those factual assumptions are "indisputably wrong." <u>In re MyFord Touch Consumer Litig.</u>, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (quoting <u>Guillory v. Domtar Indus. Inc.</u>, 95 F.3d 1320, 1331 (5th Cir. 1996)); <u>see also</u> Fed. R. Evid. 702, Adv. Comm. Notes (2000) (explaining that "experts sometimes reach different conclusions" when facts are in dispute).  The purpose of cross-examination is to "negate the facts or factual assumptions underlying an expert's opinion." <u>In re MyFord Touch</u>, 291 F. Supp. 3d at 967.

## III.   DISCUSSION

The Court concludes that (A) Mr. King is qualified to provide testimony critiquing the design of the blender; and (B) the opinions in his report vary in their reliability and relevance.

### A.   QUALIFICATIONS

SharkNinja does not challenge Mr. King's qualifications. <u>See</u> Mot.  Mr. King holds a bachelor's degree and a master's degree in engineering and has ample experience in the failure analysis, design, and risk assessment of blenders. <u>See</u> King Report at 3.  Therefore, Mr. King is qualified by "knowledge, skill, experience, training, or education" to provide testimony critiquing the design of the Blender. <u>See</u> Fed. R. Evid. 702.

### B.   RELEVANCE AND RELIABILITY

SharkNinja seeks to exclude Mr. King's testimony for the following reasons:

> A. Opinion No. 1, stating that the Blender's design is defective because it can "unintentionally separate," is irrelevant and unreliable.  Mot. at 7.

United States District Court
Northern District of California

B. Opinion No. 1, stating that there are alternative designs, is irrelevant and unreliable.  <u>Id.</u> at 7–8.

C. Opinion No. 2, stating that the warnings evince SharkNinja's knowledge of the hazard, is irrelevant.  <u>Id.</u> at 8.

D. Opinion Nos. 3 and 4, stating that SharkNinja failed to address the known hazard of loose blades in its DFMEA analysis and that, if it had, it would have implemented a locking mechanism, are unreliable.  <u>Id.</u> at 9.

E. Opinion No. 5, stating that the lack of a locking mechanism likely caused Plaintiff's injury, is unreliable.  <u>Id.</u> at 9.

Based on <u>Daubert</u> and Rule 702, the Court admits Opinion Nos. 1 and 2, and excludes Opinion Nos. 3, 4, and 5.  <u>See</u> <u>Daubert</u>, 509 U.S. at 589.

**1.     The Blade Assembly can "Unintentionally Separate"**

SharkNinja argues that Opinion No. 1 is:

a. Irrelevant and unreliable because Mr. King copied facts from the <u>Welch</u> Report.  Mot. at 7.

b. Irrelevant and unreliable because Mr. King neither identified a scenario where the blade assembly can "unintentionally separate" if the lid is properly locked, nor analyzed the Blender with the lid on.  <u>Id.</u>; Reply (dkt. 49) at 3.

As explained below, Mr. King's opinion that the blade assembly can "unintentionally separate" is admissible because it is relevant and reliable.  <u>See</u> King Report at 15 ¶ 1; <u>Daubert</u>, 509 U.S. at 589.

**a.     Copying from the <u>Welch</u> Report**

**i.     Relevance**

SharkNinja argues that Mr. King's opinion is irrelevant because it is based on "a completely different incident" that is "irrelevant" to Plaintiff's case.  Mot. at 17.  Plaintiff argues that Mr. King's expert report is relevant because "the physics, methodology, and mechanism of injury" are the same as <u>Welch</u>.  Opp'n (dkt. 47) at 4.  According to the <u>Welch</u> Report, a consumer was injured by the unsecured blade assembly of a similar

SharkNinja product when it separated from the pitcher when the product was knocked off the counter.  See Welch Report at 5.  Although Plaintiff here was "intentionally" using the Blender to make a smoothie instead of "unintentionally" knocking it off the counter, the scenario in the Welch Report is not so dissimilar that Mr. King' testimony is unhelpful to a jury in this case.  See Fed. R. Evid. 702(a).  Moreover, the propriety of Mr. King's basing his report on (or copying from) the Welch Report is an appropriate topic for cross-examination.  See Primiano, 598 F.3d at 564.

**ii.**     **Reliability**

Expert testimony may not be excluded "on the ground that the court believes one version of the facts and not the other."  Fed. R. Evid. 702, Adv. Comm. Notes (2000).  SharkNinja contends that Mr. King's opinion is unreliable because he has an incorrect understanding of the facts of this case based on a "materially different incident, product, and circumstances."  Mot. at 16.  On the other hand, Plaintiff characterizes Mr. King's occasional inclusion of facts particular to the Welch Report in his report for this case as "an editing typo."  Opp'n at 3.  Given that Mr. King both correctly and incorrectly describes Plaintiff's incident in his report, as explained in Section I.C supra, it is ambiguous whether Mr. King made an error or misunderstands the facts of Plaintiff's case.  Therefore, counsel should address the factual errors in the King Report through cross-examination.  See In re MyFord Touch, 291 F. Supp. 3d at 967.

**b.**     **Properly Locked Lid**

**i.**     **Relevance**

Next, SharkNinja argues that Mr. King's opinion that the blade assembly can unintentionally separate is irrelevant because Mr. King fails to identify a scenario where the blade assembly would detach if the lid was properly locked.  Mot. at 14–15.  Plaintiff does not remember unlocking the lid but does not deny doing so.  See Pl.'s Dep. Vol. II at 32:22–25–33:1.  SharkNinja's expert asserts that the Blender's lid cannot fall off unless the user did not properly lock the lid.  Rimkus Report at 16.  It is undisputed that the lid fell off while Plaintiff was pouring her smoothie.  See Pl.'s Dep. Vol. II at 29:2–9.  This

suggests that the Plaintiff unlocked the lid before attempting to pour the smoothie.  See id.; Rimkus Report at 16.  Therefore, Mr. King's analysis of how the blade assembly behaves without a properly locked lid is likely to be helpful to a jury.  See Fed. R. Evid. 702(a).

SharkNinja further asserts that Mr. King's opinion is irrelevant because he only tests the product "with the lid removed."  Mot. at 15; see King Report at 5.  Plaintiff poured the smoothie with the lid on.  See Pl.'s Dep. Vol. II at 28:5–15.  It is unclear whether Mr. King's analysis of the Blender with the lid removed has "any tendency to make the existence of any fact that is of consequence" to the determination of this case more or less probable because Plaintiff's Blender appears to have been on but not locked. See King Report at 5; Pl.'s Dep. Vol. II at 28:5–15; Daubert, 509 U.S. at 587.  The Ninth Circuit holds that "[s]haky" evidence should be cross examined but not excluded. Primiano, 598 F.3d at 564.  Therefore, Mr. King's analysis of the Blender with the lid off is an issue for cross examination.  See id.; King Report at 5; Pl.'s Dep. Vol. II at 28:5–15; Rimkus Report at 16.

### ii.     Reliability

SharkNinja argues that Mr. King's characterization of Plaintiff's incident as "unintentional separation" is unfounded because the blade assembly is expected to fall off when the pitcher is tilted without a lid.  Mot. at 15.  Evidence is reliable if it is grounded in "science's methods and procedures" and based on "known facts or [. . .] ideas inferred from such facts or accepted as true on good grounds."  Daubert, 509 U.S. at 580.  Although separation of the blade assembly when the lid of the pitcher is unlocked would not be "unintentional" to the manufacturer, Mr. King appears to mean that this scenario might well be "unintentional" to the user because the blade assembly can "easily separate" from the pitcher.  See King Report at 3, 15 ¶ 1.  Mr. King's word choice does not render his testimony unreliable.  See id.; Daubert, 509 U.S. at 580.

### 2.     Safer Alternative Designs

SharkNinja next argues that Opinion No. 1 is:

a. Unreliable because Mr. King did not provide sufficient details, such as testing, to evaluate the efficacy and safety of his proposed alternative design. Mot. at 8, 17–18.

b. Unreliable because Mr. King visually compares the Blender to the KitchenAid Chopper, which is unsuitable for comparison. Id. 18–20.[5]

c. Irrelevant because there is no scenario where the blade falls out when the lid is properly locked. Id. at 18.

As explained below, Mr. King's opinion that there is a safer alternative design is admissible because it is relevant and reliable. See King Report at 15 ¶ 1; Daubert, 509 U.S. at 589.

### a.   Lack of Testing

The absence of testing does not preclude a finding of reliable expert testimony. See Scantlin v. Gen. Elec. Co., 510 F. App'x 543, 545 (9th Cir. 2013) (holding that a lack of testing was a proper subject for cross-examination but did not warrant exclusion because the trial court's gatekeeping function is not "a replacement for the adversary system") (citations omitted); Klingenberg v. Vulcan Ladder USA, LLC, 936 F.3d 824, 829–30 (8th Cir. 2019) (holding that physical testing impacts the credibility but not the admissibility of expert testimony; expert testimony can be admitted based on observation and expertise alone if it is relevant and reliable); Watkins v. Telsmith, Inc., 121 F.3d 984, 992 (5th Cir. 1997) (holding that a district does not exceed its bounds by emphasizing a lack of testing in deciding to exclude expert testimony, but that testing is not an absolute requirement) (citations omitted).

Similar to Klingenberg, Mr. King's opinions were based on his experience and expertise in blender investigations, general engineering principles, information about Plaintiff's incident, and his examination of the Blender. See 936 F.3d at 829; King Report at 3–14. Mr. King provided substantial detail on his proposed alternative design: a locking

---

[5] The Court notes that this position conflicts with SharkNinja's argument at the motion hearing about consumer expectations of loose-fitting blades.

mechanism for the blade assembly.  <u>See</u> King Report at 8–9.  Although SharkNinja asserts that Mr. King has failed to consider whether his alternative design would make the product more dangerous, SharkNinja does not provide case law requiring that Mr. King do so.  <u>See</u> Mot. at 18.  Mr. King has done "more than just conceptualiz[e] possibilities."  <u>See</u> <u>Watkins</u>, 121 F.3d at 992 (holding that expert testimony was properly excluded when it lacked <u>any</u> empirical support or specificity).

Furthermore, in <u>Klingenberg</u>, the court found the expert's testimony was admissible despite a lack of testing because the expert had previously tested products with the same features at issue in other cases.  <u>See</u> 936 F.3d at 829.  BEAR previously tested a locking mechanism for the blade assembly of a similar SharkNinja product and found that it had "adequate retention to prevent laceration accidents similar to the subject accident with little additional cost."  <u>See</u> <u>id.</u>; Welch Report at 7.

Therefore, the lack of testing in Mr. King's report is a proper subject for cross-examination but does not warrant exclusion.  <u>See</u> <u>Scantlin</u>, 510 F. App'x at 545.

### b.      Comparison to KitchenAid Chopper

SharkNinja claims that Opinion No. 1 is unreliable because Mr. King only visually compares the KitchenAid Chopper and the Blender, and because the KitchenAid Chopper has different specifications and a different intended use.  Mot. at 18–20.  SharkNinja does not provide case law requiring the comparison product to have the same specifications and intended use.  <u>See</u> <u>id.</u>  Some district courts in the Second Circuit hold that expert testimony can be excluded if the expert's reasonable alternative design is "an entirely different product" than the one at issue.  <u>See</u> <u>Hilaire v. DeWalt Indus. Tool Co.</u>, 54 F. Supp. 3d 223, 248–49 (E.D.N.Y. 2014) (excluding expert testimony proposing a feature used on a stationary table saw as an alternative design for a portable table saw) (collecting cases).  In <u>Hilaire</u>, the court did not require the comparison product to have the same specifications as the product at issue; it merely noted that the expert failed to provide <u>any</u> information regarding the specifications and purpose of the alternative design and it was therefore not clear that the design could be adapted to work for the product at issue.  <u>See</u> <u>id.</u> at 248–49.

1    Mr. King notes that the designs of the KitchenAid Chopper and the Blender are

2    visually similar and, most importantly, that they both have a blade assembly that slides

3    over a fixture in the pitcher.  See King Report at 8.  The KitchenAid Chopper and the

4    Blender are also similar in purpose; although the KitchenAid Chopper is not intended for

5    crushing ice or making smoothies, both products blend and process food.  See Rimkus

6    Report at 30.  The two products are similar enough in design and purpose such that the

7    comparison does not render Mr. King's report unreliable.  See Daubert, 509 U.S. at 580.

8    Therefore, the propriety of Mr. King's comparison is an appropriate topic for cross-

9    examination but is not grounds for exclusion.  See Primiano, 598 F.3d at 564.

### c.    Properly Locked Lid

11    SharkNinja argues that Mr. King's proposed alternative design is irrelevant because

12    the blade assembly of the Blender does not "unintentionally separate[]" when the pitcher is

13    tilted with a properly locked lid.  Mot. at 18.  As discussed in Section II.B.1.b.i supra,

14    whether Mr. King's analysis of the Blender with the lid off can be properly analogized to

15    this case, where the lid appears to have been on but not locked, is an issue for cross-

16    examination.  See Primiano, 598 F.3d at 564; King Report at 5; Pl.'s Dep. Vol. II at 28:5–

17    15; Rimkus Report at 16.

### 3.    Loose Blade Warnings Show SharkNinja's Knowledge of Defect

19    SharkNinja also argues that Opinion No. 2 is irrelevant because the blade assembly

20    warnings simply state that a risk exists and do not indicate that the product is defective or

21    dangerous.  Mot. at 8.  This Court disagrees: Mr. King's opinion that the warnings are

22    evidence of SharkNinja's awareness of the hazard is admissible because it is relevant and

23    reliable.  See King Report at 15 ¶ 2; Daubert, 509 U.S. at 589.

24    SharkNinja does not challenge the reliability of Opinion No. 2.  See Mot. at 21.

25    SharkNinja argues only that Opinion No. 2 is irrelevant because warnings are not

26    indicative of a defective or unreasonably dangerous product.  Id. (citing Restatement

27    (Second) of Torts § 420A cmt. j (1965)).  Evidence is relevant if it has "any tendency to

28    make the existence of any fact that is of consequence to the determination of the action

14

more probable or less probable than it would be without the evidence." Daubert, 509 U.S. at 587.  Although the warnings alone do not establish liability, they do suggest that SharkNinja was aware that separation of the blade assembly posed a potential risk to the user.  Therefore, Opinion No. 2 is relevant.  See id.

### 4.   SharkNinja's Design Failure Modes and Effects Analysis (DFMEA)

SharkNinja additionally argues that Opinion Nos. 3 and 4 are:

    a.   Unreliable because Mr. King considered neither information that SharkNinja provided to him regarding SharkNinja's testing and analysis of the Blender nor the fact that SharkNinja provided warnings.  Mot. at 9.

    b.   Unreliable because Mr. King did not provide evidence that SharkNinja did not consider alternatives or that it rejected alternatives based on other negative consequences.  Id.

As explained below, Mr. King's opinions that SharkNinja did not address loose blades in its DFMEA and that, if it had, it would have implemented a locking mechanism, are not admissible because they are speculative and therefore unreliable.  See King Report at 15 ¶¶ 3–4.  Mr. King offers no evidence in support of Opinion No. 3, that, in generating its DFMEA, SharkNinja failed to consider the hazard of falling blades.  See id.  Mr. King's assertion in Opinion No. 4, that SharkNinja would have implemented a locking mechanism if it had considered the hazard of loose blades, is based on a "hypothetical sequence of events."  See Banga v. Kanios, 16-cv-04270-RS, 2023 WL 1934484, at *2 (N.D. Cal. Jan. 24, 2023).  Opinion Nos. 3 and 4 are therefore both based on "unsupported speculation" and not admissible.  See Daubert, 509 U.S. at 590.

### 5.   Alternative Design Would Have Prevented Plaintiff's Injury

Finally, SharkNinja argues that Opinion No. 5 is unreliable because the facts of Mr. King's report are inconsistent with Plaintiff's deposition.  Mot. at 9.  Mr. King's opinion that the Blender tipping over "without the lid" and without a locking mechanism likely caused Plaintiff's injury is not admissible because it is not based on accurate facts.  See

United States District Court
Northern District of California

King Report at 15 ¶ 5; Fed. R. Evid. 702(b).

Mr. King testified that the injury was caused by "the pitcher being tipped over without the lid." King Report at 15 ¶ 5. This conflicts with Plaintiff's deposition; she testified that she tilted the pitcher with the lid on, and that the lid then fell off. See Pl.'s Dep. Vol. II at 28:5–15. Mr. King's statement that the pitcher tipping over without the lid caused Plaintiff's injury is based on facts that are "indisputably wrong." See In re MyFord Touch, 291 F. Supp. 3d at 967. Therefore, Opinion No. 5 is not based on "a body of known facts or [. . .] ideas inferred from such facts or accepted as true" and is unreliable. See Daubert, 509 U.S. at 580.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES the motion as to Opinion Nos. 1 and 2, and GRANTS the motion as to Opinion Nos. 3, 4, and 5.

**IT IS SO ORDERED.**

Dated: June 25, 2024

_____
CHARLES R. BREYER
United States District Judge